FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 31, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

STEFANIE K.,

                          Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

                          Defendant.

NO:  1:17-CV-3170-FVS

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT AND DENYING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 14 and 15.  This matter was submitted for consideration

without oral argument.  The plaintiff is represented by Attorney D. James Tree.

The defendant is represented by Special Assistant United States Attorney Leisa A.

Wolf.  The Court has reviewed the administrative record, the parties' completed

briefing, and is fully informed.  For the reasons discussed below, the court

**GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 14, and **DENIES**

Defendant's Motion for Summary Judgment, ECF No. 15.

**JURISDICTION**

Plaintiff Stefanie K.[1] protectively filed for supplemental security income on August 31, 2007, alleging an onset date of August 1, 2007. Tr. 83-85. Benefits were denied initially, Tr. 41-44, and upon reconsideration, Tr. 46-47. Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on August 20, 2009. Tr. 22-38. The ALJ denied benefits, Tr. 9-21, and the Appeals Council denied review, Tr. 3-7. On April 5, 2012, the United States District Court for the Eastern District of Washington granted Plaintiff's Motion for Summary Judgment, and remanded the case for further proceedings. Tr. 464-79. On July 9, 2014, Plaintiff appeared for an additional hearing before the ALJ. Tr. 435-44. On August 11, 2014, the ALJ denied benefits. Tr. 400-28. On July 22, 2015, the United States District Court for the Eastern District of Washington granted the parties' stipulated motion for remand, and remanded the case for further proceedings. Tr. 1268-76. On February 28, 2017, Plaintiff appeared for an additional hearing before the ALJ. Tr. 1202-24. On July 20, 2017, the ALJ denied benefits. Tr. 1174-97. The matter is now before this Court pursuant to 42 U.S.C. § 1383(c)(3).

/ / /

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

**BACKGROUND**

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 44 years old at the time of the hearing. Tr. 1205. She testified that she stopped going to school in 10th grade, and the last year was at an alternative school. Tr. 1205. She does not have her GED, despite trying to get it a couple of times. Tr. 1205. Plaintiff testified that he is homeless, and stays with "friends and family." Tr. 1206, 1214. She has no work history, aside from the 12 days she worked for a "fruit place," and working for a caregiver for one weekend. Tr. 1206-07. She testified that she could not keep a steady job because she has no experience, got pregnant at 15, and ended up as a "displaced homemaker." Tr. 1207.

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to

"more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE–STEP SEQUENTIAL EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be

"of such severity that she is not only unable to do her previous work[,] but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity." Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not

disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 31, 2007, the application date. Tr. 1179. At step two, the ALJ found Plaintiff has the following severe impairments: anxiety, personality disorder, and depression. Tr. 1179. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 1181. The ALJ then found that Plaintiff has the RFC

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: she can perform simple, routine tasks and follow short, simple instructions. She can do work that needs little or no judgment and can perform simple duties that can be learned on the job in a short period of less than thirty days. She can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required. She can deal

with occasional changes in the work environment and can do work that requires no contact with the general public to perform the work tasks.

Tr. 1182-83.  At step four, the ALJ found that Plaintiff has no past relevant work.

Tr. 1188.  At step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including: industrial cleaner, kitchen helper, and laundry worker II.  Tr. 1189.  On that basis, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since August 31, 2007, the date the application was filed.  Tr. 1190.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act.  ECF No. 14.  Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence; and

2. Whether the ALJ improperly discredited Plaintiff's symptom claims.

## DISCUSSION

### A. Medical Opinions

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir.2001) (citations omitted).

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8

Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir.2005). Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Id.* (citing *Lester,* 81 F.3d at 830–831). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source." *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources. 20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion. *Molina*, 674 F.3d at 1111. However, the ALJ is required to "consider

observations by nonmedical sources as to how an impairment affects a claimant's ability to work." *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of ten medical providers as to Plaintiff's claimed physical and mental impairments. ECF No. 14 at 7-22.

### 1.  Physical Impairments

First, Plaintiff contends the ALJ erred in rejecting the medical opinions of Jeremiah Crank, M.D., Holly Petaja, M.D., and Kelli Campbell, A.R.N.P.

### a.  Jeremiah Crank, M.D.

In June 2016, Dr. Jeremiah Crank examined Plaintiff and assessed marked limitations in her ability to perform basic work-related activities, including: sitting, standing, walking, lifting, carrying, handling, pushing, pulling, reaching, stooping, and crouching. Tr. 1395. Dr. Crank opined that Plaintiff was limited to sedentary work. Tr. 1396. The ALJ gave Dr. Crank's opinion little weight. Tr. 1181. As noted by Defendant, because Dr. Crank's opinion is uncontradicted in the record, the ALJ must provide clear and convincing reasons for rejecting his opinion. *Bayliss*, 427 F.3d at 1216. The ALJ discounted Dr. Crank's opinion because it "is based on [Plaintiff's] subjective complaints of pain, but she did not follow through with any treatment and did not attend numerous scheduled evaluations, so the record contains no evidence of any functional limitations. Though [Plaintiff's]

providers ordered x-rays, she does not appear to have followed through with these, and has not had any imaging performed since her MRI in 2010." Tr. 1181.

An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *see also Orn*, 495 F.3d at 631 (the consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion). Plaintiff argues this finding "ignores the significant objective findings on which Dr. Crank primarily relied: an MRI of [Plaintiff's] back showing a [possible] herniated disc, tenderness to palpation of the neck, lower back, and paralumbar; muscle tightness; reduced range of motion of the back, legs, and hips; and positive straight leg test bilaterally on the lower extremity." ECF No. 14 at 8 (citing Tr. 1368, 1397-98); Tr. 1364-65.

The Court agrees. The ALJ's decision does not indicate that he considered the abnormal results of the musculoskeletal examination conducted by Dr. Crank before he opined that Plaintiff was limited to sedentary work. Moreover, while certainly relevant to the credibility analysis, it is unclear how Plaintiff's failure to appear for the x-rays ordered by Dr. Crank, or for scheduled consultative exams, is inconsistent with Dr. Crank's opinion as to Plaintiff's physical limitations at the time of his examination in June 2016. Finally, neither the ALJ, nor the Defendant, offers any evidence that Dr. Crank relied "to a large extent" on Plaintiff's minimal subjective complaints as opposed to Dr. Crank's clinical findings and his review of

objective testing. For all of these reasons, the ALJ failed to provide clear and convincing reasons, supported by substantial evidence, to reject Dr. Crank's opinion. Dr. Crank's opinion as to Plaintiff's physical limitations must be reconsidered upon remand.

Further, as noted by Plaintiff, the ALJ's erroneous consideration of Dr. Crank's opinion calls into question the subsequent findings in the sequential analysis, including: finding Plaintiff's physical impairments were not severe at step two, assessing a RFC that Plaintiff is capable of a full range of work at all exertional levels, and finding at step five that Plaintiff was capable of performing jobs at the medium exertional level. ECF No. 14 at 11. Because the analysis of these questions is dependent on the ALJ's evaluation of the medical evidence, the ALJ is instructed to conduct a new sequential analysis on remand.

### b. Additional Opinions

In June 2016, Dr. Holly Petaja opined that Plaintiff was limited to sedentary work. Tr. 1415. The ALJ gave Dr. Petaja's opinion little weight because she provided "no explanation for this opinion and her corresponding notes do not point to any physical examination to show limitations in functional capacity." Tr. 1415; *see Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) (an ALJ may permissibly reject check box reports that do not contain any explanation of the bases for their conclusions); *see also See Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) ("the ALJ need not accept the opinion of any physician, including a

treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."). In addition, the ALJ noted that Plaintiff engaged in "a full range of daily and self-care activities and spent much of her day doing yard work, which is inconsistent with the drastic limitations opined by Dr. Petaja." Tr. 1415 (citing Tr. 1409); *see Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (ALJ may discount an opinion that is inconsistent with a claimant's reported functioning). These were clear and convincing reasons for the ALJ to discount Dr. Petaja's opinion.

In April 2010, Kelli Campbell, ARNP, opined that Plaintiff was limited to sedentary work, due to hip pain and asthma. Tr. 613-15. The ALJ gave her opinion little weight. Tr. 1181; *see Molina*, 674 F.3d at 1111. Specifically, the ALJ found Ms. Campbell's opinion appears to be based "almost entirely on [Plaintiff's] subjective complaints, as the corresponding treatment notes do not show any functional limitations." Tr. 1181. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041; *see also Bayliss*, 427 F.3d at 1216 ("discrepancy" between a treating provider's clinical notes and that provider's medical opinion is an appropriate reason for the ALJ to not rely on that opinion regarding the claimant's limitations). However, as discussed below, the ALJ did not properly discount Plaintiff's symptom claims; thus, the ALJ's rejection of Ms. Campbell's opinion because she improperly relied

on Plaintiff's symptom claims was not a germane reason to reject Ms. Campbell's opinion.

Regardless, the ALJ additionally noted that on the same day that her opinion was rendered, Ms. Campbell only recommended continued follow-up and physical therapy; and Plaintiff was in no distress, had intact balance and gait, and full range of motion. Tr. 1181 (citing Tr. 616, 620, 623). Based on this evidence, the ALJ concluded that Ms. Campbell's assessment that Plaintiff was limited to sedentary work was not supported by her own treatment notes. A physician's opinion may be rejected if it is contradicted by that physician's own treatment notes. *Bayliss*, 427 F.3d at 1216. Here, the ALJ reasonably found that Ms. Campbell's own benign clinical findings, and conservative treatment recommendations, did not support a finding that Plaintiff was limited to sedentary work. Tr. 1181. This was a germane reason for the ALJ to reject Ms. Campbell's opinion.

Finally, the ALJ noted that Ms. Campbell opined limitations based, in part, on Plaintiff's complaints of hip pain; however, imaging results of Plaintiff's hip were normal, and "subsequent records show no evidence of worsening of these issues or need for any more significant treatment." Tr. 1181. "[A]n ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole, or by objective medical findings." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). The lack of support for

Ms. Campbell's findings in the overall record, and objective medical findings, was a germane reason for the ALJ to give her opinion little weight.

### 2. Mental Impairments

Second, Plaintiff argues the ALJ erred in rejecting opinions regarding Plaintiff's psychological functioning, including: Christopher J. Clark, M.Ed., Ron Gengler, MS, LMHC, Carmen Young, PA-C, Dick Moen, MSW, R.A. Cline, Psy.D., Aaron Burdge, Ph.D., and Emily Shoemaker, MHP, LMFT. ECF No. 14 at 12-22.

### a. Christopher Clark, M.Ed.

In July 2007, Christopher Clark, LMHC opined that Plaintiff had moderate limitations in six categories of basic work-related activities, and marked limitations in her ability to interact appropriately in public contacts, respond appropriately to and tolerate the pressure and expectations of a normal work setting, and control physical or motor movements and maintain appropriate behavior. Tr. 165. The ALJ gave little weight to this opinion. Tr. 1187. Mr. Clark is considered an "other source" under the regulations. 20 C.F.R. § 416.913(d) (2013). Thus, the ALJ was required to cite germane reasons for rejecting his opinion. *See Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993).

First, the ALJ found that Mr. Clark's opinion was "based on a single evaluation, and treatment notes prior to and after his opinion were rendered document generally benign psychological signs and a history of stable and well-

controlled psychological impairments with medications." Tr. 1187. The consistency of a medical opinion with the record as a whole is a relevant factor in evaluating that medical opinion. *See Orn*, 495 F.3d at 631. As an initial matter, the Court notes that Mr. Clark's July 2007 opinion was assessed one month before the alleged onset date of August 31, 2007, and the only evidence cited in the ALJ's decision "prior to" Mr. Clark's opinion were a few records dated three to four years prior to the alleged onset date. Tr. 1184 (citing Tr. 152-53, 295); *see Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (statement of disability made outside the relevant time period may be disregarded).

Moreover, when explaining his reasons for rejecting medical opinion evidence, an ALJ must do more than state a conclusion; rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*. Here, the ALJ does not cite any treatment notes in support of the finding, nor does the ALJ explain with requisite specificity how "treatment notes prior to and after" Mr. Clark's opinion are inconsistent with the marked limitations opined by Mr. Clark. Moreover, as noted by Plaintiff, the ALJ's finding is contradicted by extensive treatment notes in the record indicating "the difficulty and ultimately unsuccessful attempts by [Plaintiff's] medication providers to find a medication to improve

[Plaintiff's] symptoms." ECF No. 14 at 13; Tr. 359, 372-74, 818, 821, 830, 834, 852, 870, 886, 895-97, 902, 909, 948-49, 955, 1026, 1058, 1105, 1140. Based on the foregoing, this was not a specific and germane reason to reject Mr. Clark's opinion.

Second, and similarly, the ALJ rejected Mr. Clark's opinion because it was "heavily based on [Plaintiff's] self-reporting, and is inconsistent with the longitudinal history of the treatment notes showing minimal impairment when [Plaintiff] takes her medication." Tr. 1187. An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. However, while not considered by the ALJ, Mr. Clark examined Plaintiff and conducted a mental status examination, the results of which included: unkempt appearance, adequate hygiene, rigid and tense posture, restless body movement, anxious and constricted affect, psychomotor retardation, poor judgment, fair memory, obsessive thought content, circumstantial stream of thought, concrete thinking style, fair attention span, and poor concentration. Tr. 167-68. Neither the ALJ, nor the Defendant, offers any evidence that Mr. Clark relied "to a large extent" on Plaintiff's subjective complaints as opposed to these clinical findings. Moreover, as discussed below, the ALJ improperly rejected Plaintiff's mental symptom claims partially on the basis that the longitudinal record showed Plaintiff's claimed mental impairments improved with medication. For these reasons, this was not a germane reason to reject Mr. Clark's

opinion.  On remand, the ALJ must reconsider Mr. Clark's opinion, and provide

legally sufficient reasons for evaluating the assessed limitations, supported by

substantial evidence.

### b.  Ron Gengler, MS, LMHC

In July 2008 and May 2009, Ron Gengler, MS, LMHC, opined marked

limitations in Plaintiff's ability to relate appropriately to co-workers and supervisors,

interact appropriately in public contacts, and respond appropriately and tolerate the

pressure and expectations of a normal work setting.  Tr. 735, 741.  The ALJ gave

these opinions little weight because Mr. Gengler "gives no detailed explanation for

any of his findings, and appears to rely heavily on [Plaintiff's] subjective

complaints."  Tr. 1187.  Mr. Gengler is considered an "other source" under the

regulations; thus, the ALJ must give germane reasons to reject his opinion.  20

C.F.R. § 416.913(d) (2013); *see Dodrill*, 12 F.3d at 918-19.

The ALJ need not accept the opinion of any physician, including a treating

physician, if that opinion is "brief, conclusory and inadequately supported by

clinical findings."  *Bray,* 554 F.3d at 1228.  In addition, as discussed above, an ALJ

may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-

reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at

1041.  However, while not considered by the ALJ, Mr. Gengler's evaluation

indicated that he reviewed "psychiatric documentation" and conducted a face to face

interview, including mental status examinations in 2008 and 2009 that found limited

eye contact, restless body movement, quiet speech, anxious and depressed affect, psychomotor agitation, fair judgment, fair memory, depressive thought content, concrete thinking style, and fair attention and concentration. Tr. 735, 737-38, 741, 743-44. Neither the ALJ, nor the Defendant, offers any evidence that Mr. Gengler relied "to a large extent" on Plaintiff's subjective complaints in assessing Plaintiff's functional limitations, as opposed to his clinical findings and review of her medical history. Moreover, as discussed below, the ALJ improperly rejected Plaintiff's mental health symptom claims. For these reasons, the ALJ did not offer germane reasons to reject Mr. Gengler's opinion. On remand, the ALJ must reconsider his opinion, and provide legally sufficient reasons for evaluating the assessed marked limitations, supported by substantial evidence.

### c. Carmen Young, PA-C

In July 2009, Carmen Young, PA-C opined that Plaintiff was moderately limited in multiple categories; and in the narrative functional capacity assessment portion of her evaluation, she specifically found that Plaintiff could not work full time but "would be capable of part-time work in the future." Tr. 378-80. The ALJ gave Ms. Young's opinion little weight because "[t]here is no significant support offered for this conclusory finding." Tr. 1186. Moreover, similar to the opinions discussed above, the ALJ found "there is no significant evidence" to support Ms. Young's opinion that Plaintiff "could only work part-time" because mental status examinations and longitudinal treatment notes do not support "such significant

limitations," and Plaintiff's symptoms are well-controlled on medication. Tr. 1186-87. However, the Court declines to address these reasons because Plaintiff does not challenge them with specificity in her opening brief. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008). Rather, Plaintiff argues only that the ALJ's rejection of Ms. Young's opinion conflicts with prior order of the Court, and therefore violates the law of the case doctrine. ECF No. 14 at 15-16.

Under the law of the case doctrine, a court will generally refuse to reconsider an issue that has already been decided by the same court or a higher court in the same case. *Jefferies v. Wood,* 114 F.3d 1484, 1488–89 (9th Cir. 1997). Plaintiff argues that the ALJ's finding conflicts with this Court's prior review of Ms. Young's opinion which determined in April 2012 that "no medical evidence can be located from treating or examining providers in the record that directly contradict Ms. Young's assessment." ECF No. 14 at 15-16 (citing Tr. 471). However, while the Court in 2012 found the ALJ's rejection of Ms. Young's opinion in a previous decision was not supported by substantial evidence, the issue was not "decided" such that reconsideration of Ms. Young's opinion was foreclosed on remand. Rather, the Court issued a new decision in August 2014 that reevaluated Ms. Young's opinion (Tr. 1241-42), and that decision was subsequently remanded again according to joint stipulation of the parties in July 2015, with instructions by the Court and the Appeals Council to reconsider all of the medical opinion evidence in

the record.  Tr. 1273, 1282.  Thus, the Court finds the ALJ did not violate the law of the case doctrine, and did not err in considering Ms. Young's opinion.

### d.  Dick Moen, MSW

In March 2010, Dick Moen, MSW opined that Plaintiff was markedly limited in her ability to understand, remember and follow complex instructions; learn new tasks; exercise judgment and make decisions; perform routine tasks; and relate appropriately to co-workers and supervisors.  Tr. 605.  The ALJ gave Mr. Moen's opinion little weight.  Tr. 1187.  Mr. Moen is considered an "other source" under the regulations; thus, the ALJ must give germane reasons to reject his opinion.[2]  20 C.F.R. § 416.913(d) (2013); *see Dodrill*, 12 F.3d at 918-19.

First, the ALJ generally noted Mr. Moen's opinion "appears to be exclusively based on [Plaintiff's] self-reporting."  Tr. 1187.  An ALJ may reject a physician's opinion if it is based "to a large extent" on Plaintiff's self-reports that have been properly discounted as not credible.  *Tommasetti*, 533 F.3d at 1041.  However, as

_____

[2] In addition to the reasons discussed herein, the ALJ generally found Mr. Moen's opinion is unsupported by "the largely normal mental status evaluations and [Plaintiff's] full range of daily activities."  Tr. 1187.  The Court declines to address this reason because Plaintiff does not raise it with specificity in her opening brief. *See Carmickle*, 533 F.3d at 1161 n.2.  For all of the reasons discussed above, Mr. Moen's opinion must be reconsidered on remand.

noted by Plaintiff, the ALJ fails to consider the mental status examination conducted by Mr. Moen, which noted unkempt appearance, adequate hygiene, limited eye contact, retarded body movement, anxious and depressed affect, psychomotor retardation, visual hallucinations, poor judgment, fair remote memory, depressive thought content, concrete thinking style, poor attention span, and poor concentration. Tr. 608-09. Neither the ALJ, nor the Defendant, offers any evidence that Mr. Moen relied "to a large extent" on Plaintiff's subjective complaints as opposed to these clinical findings. Moreover, as discussed below, the ALJ improperly rejected Plaintiff's mental health symptom claims. Thus, this was not a specific and germane reason to reject Mr. Moen's opinion.

Second, the ALJ noted that Plaintiff's opinion "is rendered in the context of an evaluation to help her maintain benefits." Tr. 1187. However, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater,* 157 F.3d 715, 726 (9th Cir. 1998); *see also Lester v. Chater,* 81 F.3d 821, 832 (9th Cir.1995) (ALJ may not assume doctors routinely misrepresent to help their patients collect disability benefits). The ALJ has not pointed to, nor does the record show, any evidence to undermine the credibility of Mr. Moen's opinion. This was not a specific and germane reason to reject Mr. Moen's opinion.

Third, the ALJ found that "[d]espite alleging such drastic limitations, Mr. Moen notes that [Plaintiff] wants to get her GED and then job training or more

schooling, which appears inconsistent with his opined limitations." Tr. 606, 1187. However, while not considered by the ALJ, Plaintiff simultaneously acknowledges that she must also "get well" in order to pursue further schooling or job training. Tr. 606. Moreover, as argued by Plaintiff, her "future plans are not a valid reason for rejecting her current limitations, especially where [Plaintiff] never demonstrated the ability to carry out these goals." ECF No. 14 at 18. As noted by Mr. Moen, Plaintiff "has ADD, so getting her GED has been a struggle." Tr. 607. Thus, Plaintiff's desire to pursue school or job training, without evidence that she has the functional capacity to engage in those activities, is not a germane reason to discount Mr. Moen's opinion. On remand, the ALJ must reconsider Mr. Moen's opinion, and provide legally sufficient reasons for evaluating the assessed marked limitations, supported by substantial evidence.

### e. Emily Shoemaker

In April 2011, Emily Shoemaker examined Plaintiff and opined that she was markedly limited in her ability to understand, remember, and persist in tasks by following complex instructions; learn new tasks; communicate and perform effectively in a work setting with public contact; communicate and perform effectively in a work setting with limited public contact; and maintain appropriate behavior in a work setting. Tr. 650. The ALJ gave Ms. Shoemaker's opinion little weight because it "appears to be entirely based on [Plaintiff's] self-reporting." Tr. 1188. An ALJ may reject a physician's opinion if it is based "to a large extent" on

Plaintiff's self-reports that have been properly discounted as not credible. *Tommasetti*, 533 F.3d at 1041. Here, as opposed to the opinions discussed above, the ALJ did consider the mental status examination performed by Ms. Shoemaker, which included findings that Plaintiff was "cooperative, had logical thought processes, had fair memory and attention, and had average intellectual functioning." Tr. 1188. Moreover, the ALJ correctly noted that Ms. Shoemaker's opinion "appears to be just be reiterating [Plaintiff's] subjective complaints in quotation form on the evaluation[]." Tr. 647-53, 1188. However, as discussed below, the ALJ improperly rejected Plaintiff's mental health symptom claims. Thus, because Plaintiff's subjective claims were not properly discounted, this was not a germane reason to reject Ms. Shoemaker's opinion,. On remand, the ALJ must reconsider Ms. Shoemaker's opinion, and provide legally sufficient reasons for evaluating the assessed marked limitations, supported by substantial evidence.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

*/ / /*

### f. R.A. Cline, M.D.[3]

In May 2016, Dr. R.A. Cline opined that Plaintiff had moderate limitations in eight categories of basic work-related activities, and marked limitations in her ability to communicate and perform effectively in the workplace, and maintain appropriate behavior in a work setting. Tr. 1411. The ALJ gave "some weight" to Dr. Cline's opinion. Tr. 1186. Specifically, the ALJ found the moderate limitations opined by Dr. Cline were supported by the record, but the marked limitations "appear[] unsupported as [Plaintiff] is able to spend time with friends and family and gets along adequately with her care providers." Tr. 1186. Because Dr. Cline's opinion was contradicted by Edward Beaty, Ph.D., Tr. 231-33, the ALJ was required to provide specific and legitimate reasons for rejecting the marked limitations in Dr. Cline's opinion. *Bayliss*, 427 F.3d at 1216.

---

[3] As noted by Plaintiff, Dr. Holly Petaja reviewed Dr. Cline's opinion and assigned the same marked and moderate limitations. ECF No. 14 at 21 (citing Tr. 1413-14). The ALJ gave her opinion the same weight as Dr. Cline's, "for the same reasons." Tr. 1186. Thus, the Court finds the ALJ's reason for rejecting a portion of Dr. Petaja's opinion was not specific and legitimate, for the same reasons discussed with regard to Dr. Cline's opinion. Dr. Petaja's opinion must be reconsidered on remand.

Plaintiff argues the ALJ's reason for rejecting the marked limitations opined by Dr. Cline was not specific and legitimate. ECF No. 14 at 21-22. The Court agrees. First, the ALJ does not cite any records in support of this finding, and therefore fails to offer the requisite factual support for this conclusory assertion. *Reddick*, 157 F.3d at 725 (when explaining his reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct.").

In particular, the ALJ fails to consider the abnormal results of the mental status examination conducted by Dr. Cline that arguably supports his assessed limitations on Plaintiff's ability to communicate in the workplace, including: choppy speech and not finishing her sentence; arriving late; cooperative, but guarded and fidgety behavior; abnormal thought process and content; some abnormal memory issues; and insight and judgment are "variable, but at least partially intact." Tr. 1412. The Court notes that earlier in the decision, the ALJ cites a handful of records indicating that Plaintiff spent time with friends, as well as reports from treatment providers that Plaintiff is cooperative and participates in group therapy. Tr. 1182. However, as argued by Plaintiff, "[c]ommunicating and performing effectively, and maintaining appropriate behavior in a work setting is not comparable to spending time with friends, family, and care providers, especially considering that the former requires the ability to carry out these activities for eight hours a day, five days a

week." ECF No. 14 at 21-22. For all of these reasons, this was not a specific and legitimate reason, supported by substantial evidence, for the ALJ to reject the marked limitations assessed by Dr. Cline. On remand, the ALJ must reconsider the marked limitations assessed by Dr. Cline, and provide legally sufficient reasons for evaluating his opinion, supported by substantial evidence

### g. Aaron Burdge, Ph.D.

In August 2012, Aaron Burdge, Ph.D., completed a psychological evaluation of Plaintiff, and opined that she had moderate limitations in her ability to communicate and perform effectively in a work setting, complete a normal work day and work week without interruptions from psychologically based symptoms, and maintain appropriate behavior in a work setting. Tr. 654-58. The ALJ gave Dr. Burdge's opinion "some" weight because it is "generally consistent with a finding that [Plaintiff] could work with some limitations, which [the ALJ] provided for in the [RFC]." Tr. 1186.

Plaintiff argues that the ALJ failed to "reconcile" Dr. Burdge's opinion that Plaintiff would have "significant limitations" in her ability to complete a normal workday and workweek, with vocational expert testimony that employers would "only tolerate six unscheduled absences a year or off-task behavior greater than 10% of the time." ECF No. 14 at 20. However, the Court's review of the VE's testimony indicates that while she generally testified as to how unscheduled absences and off task time would affect a person's ability to sustain employment, she did not

specifically testify as to how Dr. Burdge's assessment of moderate limitations in Plaintiff's ability to complete a workweek and workday would affect Plaintiff's ability to sustain employment. *See* Tr. 1217-20. Thus, Plaintiff's argument is unavailing. The Court finds the ALJ did not err in considering Dr. Burdge's opinion..

**B. Plaintiff's Symptom Claims**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines

the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

Here, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, Plaintiff's "statements concerning the intensity, persistence and limiting effects of these

symptoms are not entirely consistent with the medical evidence and other evidence in the record" for several reasons.[4]  Tr. 1183.

### 1.  Improvement with Treatment

First, the ALJ noted "records show that [Plaintiff] has longstanding psychological impairment that is greatly improved with medication and counseling." Tr. 1185.  Conditions effectively controlled with medication are not disabling for purposes of determining eligibility for benefits.  *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also Tommasetti*, 533 F.3d at 1040 (a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations).  However, as argued by Plaintiff, "[t]his finding is not supported by substantial evidence, as [Plaintiff's] providers were never able to stabilize [Plaintiff's] mental health symptoms with medication or counseling."  ECF No. 14 at 23.  For instance, the ALJ cited Plaintiff's report in

---

[4] In addition to the reasons discussed herein, the ALJ noted that Plaintiff "has been incarcerated multiple times, which is likely a situational factor that makes it difficult for her to find employment."  Tr. 1185.  It is unclear to the Court that this statement was offered as a reason to discount Plaintiff's symptom claims.  To the extent that it was, the Court agrees with Plaintiff that "there is no evidence that [her] unemployment is more attributable to her criminal history" as opposed to her claimed mental health impairments.  ECF No. 14 at 23.

2008 that she initially experienced improvement with medication, but that it "stopped working." Tr. 1184 (citing Tr. 254). In February 2008, Plaintiff reported that she felt better after her medication was increased. Tr. 359. However, the same treatment note cited by the ALJ indicates that Plaintiff appeared depressed, had limited eye contact, and it appeared that she was crying; and a week later Plaintiff's treatment provider indicated she was not progressing in individual counseling sessions. Tr. 359-60. The ALJ additionally found that "[c]ounseling records from early 2010 show that [Plaintiff] admitted she did better when she took her medication, and generally did well with treatment." Tr. 1185 (citing Tr. 1021). However, the sole treatment note cited by the ALJ in support of this finding actually states that Plaintiff "agrees that she needs medication and is willing to stay on her new medications for a minimum of one month and to report to [counselor] weekly regarding any problems or complaints she may experience." Tr. 1021.

Finally, the Court's independent review of the record reveals that Plaintiff repeatedly stopped taking her medication during the adjudicatory period, which often coincided with reported improvement in her symptoms; and Plaintiff indicated in multiple treatment notes that medication only improved her symptoms "somewhat," or did not improve her symptoms at all. Tr. 359, 372-74, 818 (discontinued all meds and "brighten[ed] up"), 821 (improved since discontinuing medication), 830, 834 (medication is not helping), 852 (medication helping somewhat), 870 (cutting down on medication), 886, 895-97, 902 (taking medication

but has negative side effects), 909 (not taking medication), 948-49 (discontinued medication and has more energy), 955 (discontinued medications because they made her lose energy and have repeat thoughts), 1026 (medications are being adjusted because they are not stabilizing her symptoms), 1058 (felt she needed an increase in medication), 1105 (no improvement on medication), 1140 (worse despite medication). For all of these reasons, the record does not support a finding that Plaintiff's psychological impairments "greatly improved with medication and counseling." Tr. 1185. This was not a clear and convincing reason, supported by substantial evidence, to reject Plaintiff's symptom claims.

### 2. Work History

Second, the ALJ found it "notable" that Plaintiff "has not ever held a legitimate job, and has exhibited very little interest in pursuing employment. Her lack of motivation toward finding employment is in stark contrast to the multitude of DSHS evaluations throughout the record that were done for the purpose of establishing benefits for herself." Tr. 1185. Poor work history or a showing of "little propensity to work" during one's lifetime may be considered as a factor in evaluating Plaintiff's symptom claims. *Thomas*, 278 F.3d at 959. However, the Court notes that the DSHS evaluations generally referenced by the ALJ in support of this reasoning almost universally included marked limitations on Plaintiff's ability to do basic work activities, and several DSHS examiners found that Plaintiff was unable to work full time. ECF No. 14 at 23; Tr. 165, 380, 605, 650, 735, 741, 1411.

Thus, while the ALJ reasonably considered Plaintiff's general lack of work history as a reason to reject her symptom claims, there is no evidence that Plaintiff's lack of work history is due to lack of motivation as opposed to the mental health limitations opined by multiple treatment providers. To the extent the ALJ relied on lack of motivation to work as a reason to discount Plaintiff's symptom complaints, it was not clear, convincing, and supported by substantial evidence. .

### 3.  Lack of Objective Medical Evidence

Third, the ALJ found "the longitudinal history of treatment notes do not document a finding of disabling impairment"; and "[d]espite [Plaintiff's] subjective complaints, the records show generally unremarkable mental status evaluations and support a finding that [Plaintiff] is capable of some employment with the appropriate limitations." Tr. 1185. An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins*, 261 F.3d at 857; 20 C.F.R. § 404.1529(c)(2).

In support of this finding, the ALJ set out evidence of "generally unremarkable" mental status findings during the relevant adjudicatory period, including: full orientation, good eye contact, linear thought processes, grossly intact

cognition and memory, cooperative, normal speech, and average intellect. Tr. 1184-85 (citing Tr. 227, 254, 365-66, 658, 836, 840-41, 1163). However, the same mental status examinations cited by the ALJ also include findings of flat and constricted affect, inability to do serial 3's, fair judgment, very anxious, very depressed, displayed erratic behavior, "seems to be having a hard time", lightly blunted affect, dysphoric and anxious mood, Tr. 1184-85 (citing Tr. 227, 365, 369, 372-74, 377, 658, 839, 1163). Moreover, the ALJ failed to consider the mental status examinations conducted as part of the DSHS evaluations, as discussed in detail above, which included consistent findings of limited eye contact, restless and retarded body movement, anxious and depressed affect, tearful facial expressions, pressured or quiet qualify of speech, psychomotor retardation, average to below average intellectual functioning, concrete thinking style, fair to poor attention and concentration, circumstantial stream of thought, thought process and content not within normal limits, fair to poor judgment, and fair memory. Tr. 167-68, 608-09, 652-53, 737-38, 743-44, 1412.

Based on the foregoing, and after an exhaustive review of the record, the Court finds the ALJ's reliance on "records show[ing] generally unremarkable mental status evaluations," appears to consider only portions of the longitudinal record that favored the ultimate rejection of Plaintiff's symptom claims. *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (an ALJ "cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests

an opposite result"). This was not a clear and convincing reason, supported by substantial evidence, for the ALJ to reject Plaintiff's symptom claims.

### 4. *Failure to Seek and Comply with Treatment*

Fourth, the ALJ noted that in 2008 Plaintiff "exhibited minimal engagement with counseling and often failed to appear for appointments." Tr. 1184 (citing Tr. 358-66). Further, as noted by the ALJ, from late 2010 to the date of the decision, Plaintiff "attended sporadic DSHS evaluations but sought little care in the way of routine treatment. She also failed to appear for numerous consultative evaluations that were scheduled to help develop her case." Tr. 1185 (citing Tr. 584-86, 1164-65). Unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment may be the basis for an adverse credibility finding unless there is a showing of a good reason for the failure. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). However, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. Here, Plaintiff does not raise this issue with specificity, nor does she offer any reasons for failing to pursue or comply with treatment. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (court may decline to address issue not raised with specificity in Plaintiff's briefing). Thus, the Court finds it was reasonable for

the ALJ to rely on Plaintiff's failure to pursue regular treatment for a portion of the relevant adjudicatory period, and her failure to appear for five consultative evaluations, as a reason to discount her symptom claims.

However, this reason, standing alone, does not rise to the level of clear and convincing evidence to entirely reject Plaintiff's symptom claims. As discussed above, several of the reasons offered by the ALJ to discount Plaintiff's symptoms claims were not clear, convincing, and supported by substantial evidence. Those reasons should be reconsidered on remand..

## REMEDY

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate where "no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed," *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a district court may abuse its discretion not to remand for benefits when all of these conditions are met). This policy is based on the "need to expedite disability claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the

record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Although Plaintiff requests a remand with a direction to award benefits, ECF No. 14 at 24, the Court finds that further administrative proceedings are appropriate. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014) (remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered most of the medical opinion evidence, and failed to offer clear and convincing reasons to discount Plaintiff's symptom claims, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Thus, the Court remands this case for further proceedings.

On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating all of the relevant limitations assessed in these opinions, including precise citation to substantial evidence in the record to support those reasons. The ALJ should also reconsider the credibility analysis, and the remaining steps in the sequential evaluation analysis. Finally, the

ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14,** is **GRANTED,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, **ECF No. 15,** is **DENIED**.

3. Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel. Judgement shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** October 31, 2018.

_____*s/ Rosanna Malouf Peterson*_____
ROSANNA MALOUF PETERSON
United States District Judge